UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
Martin William Acevedo and
Stephanie Anne Acevedo,
       Debtors.                          No. 13-12-11819 SS

**MEMORANDUM OPINION ON MOTION**
**TO CONTINUE AUTOMATIC STAY**

This matter came before the Court for a final hearing on Debtors' Motion to Continue Automatic Stay (doc 9)("Motion") filed on May 8, 2012. Valley National Bank ("VNB") objected to the Motion. Doc 17. For the reasons set out below, the Court grants the Motion.[1]

Mr. Acevedo had one prior bankruptcy case pending in the year before this case was filed.[2] Consequently, pursuant to 11 U.S.C. § 362(c)(3)(A) the automatic stay would ordinarily terminate, at least as to Mr. Acevedo,[3] in this second case on

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and/or (O); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

[2] Mr. Acevedo filed case no. 13-12-10071-SS on January 11, 2012. That case was automatically dismissed effective February 26, 2012 pursuant to 11 U.S.C. § 521(I) and Fed. R. Bankr. P. 9006(a) per order entered March 5, 2012. Ms. Acevedo was a non-filing spouse in that case.

[3] Neither party argued what the effect might be of only one debtor having filed a previous case; that is, even if the stay terminated as to Mr. Acevedo, would it also terminate as to Ms. Acevedo, who had not previously filed, when the home is listed as being owned in joint tenancy with a right of survivorship. Doc 1, Schedule A. The Court need not consider the issue in light of its disposition of the motion.

the thirtieth day after its filing.  Debtors moved to continue
the stay beyond the thirty days pursuant to 11 U.S.C. §
362(c)(3)(B).

The statutory sections cited above were introduced as part
of the Bankruptcy Abuse Prevention and Consumer Protection Act of
2005.  <u>See</u> P.L. 109-8 (S 256)(April 20, 2005) 119 Stat 23 §
302(3) ("Discouraging Bad Faith Repeat Filings").  Section
362(c)(3)(B) provides:

> on the motion of a party in interest for continuation
> of the automatic stay and upon notice and a hearing,
> the court may extend the stay in particular cases as to
> any or all creditors (subject to such conditions or
> limitations as the court may then impose) after notice
> and a hearing completed before the expiration of the
> 30-day period only if the party in interest
> demonstrates that the filing of the later case is in
> good faith as to the creditors to be stayed[.]

No creditors other than VNB objected to the Motion.  The issue,
then, is whether this case was filed in good faith as to VNB.
Section 362 also contains a rebuttable presumption that a filing
is not in "good faith":

> a case is presumptively filed not in good faith (but
> such presumption may be rebutted by clear and
> convincing evidence to the contrary)--
>     (i) as to all creditors, if--
>         (I) <u>more than 1 previous case</u> under any of
> chapters 7, 11, and 13 in which the individual was a
> debtor was pending within the preceding 1-year period;
>         (II) a previous case under any of chapters 7,
> 11, and 13 in which the individual was a debtor was
> dismissed within such 1-year period, after the debtor
> failed to--
>             (aa) <u>file or amend the petition or other
> documents as required by this title or the court
> without substantial excuse (but mere inadvertence or</u>

-2-

<pre>
          negligence shall not be a substantial excuse unless the
          dismissal was caused by the negligence of the debtor's
          attorney);
                    (bb) provide adequate protection as
          ordered by the court; or
                    (cc) perform the terms of a plan
          confirmed by the court; or
               (III) there has not been a substantial change
          in the financial or personal affairs of the debtor
          since the dismissal of the next most previous case
          under chapter 7, 11, or 13 or any other reason to
          conclude that the later case will be concluded--
                    (aa) if a case under chapter 7, with a
          discharge; or
                    (bb) if a case under chapter 11 or 13,
          with a confirmed plan that will be fully performed; and
            (ii) as to any creditor that commenced an action
          under subsection (d) in a previous case in which the
          individual was a debtor if, as of the date of dismissal
          of such case, that action was still pending or had been
          resolved by terminating, conditioning, or limiting the
          stay as to actions of such creditor.
</pre>

11 U.S.C. § 362(c)(3)(C) (Emphasis added.)

Section 362(c)(3)(C)(i)(I) is not relevant because there was not "more than 1 previous case" in the preceding 1-year period.

Section 362(c)(3)(C)(i)(II) may be relevant. Subsections (bb) and (cc) are not relevant because the Court never ordered adequate protection in the previous case, nor was a plan confirmed. VNB argues that the Mr. Acevedo failed to file statements and schedules "as required by this title ... without substantial excuse," which is the ground set forth in subsection (aa). As is discussed below, however, VNB ignores the qualification to subsection (aa) that "mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney."

-3-

VNB also argues that section 362(c)(3)(C)(i)(III) applies because there has been no change in financial circumstances after dismissal of the first case, and that there is no ability of the Debtors to perform fully a Chapter 13 plan. This will also be discussed below.

Section 362(c)(3)(C)(ii) is not relevant because VNB did not seek stay relief in the earlier case.

**FACTS**

VNB Exhibit 1 is a Default Judgment and Order of Foreclosure ("Judgment"), filed June 17, 2009, in <u>Valley National Bank v. Martin Acevedo and Stephanie A. Acevedo</u> ("Defendants") in case No. D-0101-CV-2009-00800 (1st Judicial District, New Mexico) ("Lawsuit"). The Judgment provides that the lien of a Mortgage dated May 3, 2004 and filed for record on May 7, 2004 in the records of Santa Fe County, New Mexico ("Mortgage") was a valid first lien on the property described by the Mortgage ("Property" or "Debtors' Residence"). The Judgment also foreclosed any right, title, interest or lien of the Defendants in the Property and authorized the appointment of a Special Master and the sale of the Property. The Judgment declared that VNB was the rightful owner of the property.[4]

---

[4]This provision in the judgment does not prevent Debtors' attempted retention of the Property. See 11 U.S.C. § 1322(c)(1):
    Notwithstanding subsection [1322](b)(2) and applicable
    nonbankruptcy law--
(continued...)

-4-

VNB and Defendants entered a "Forbearance Agreement" ("Agreement") on August 6, 2009 under which VNB agreed to forbear exercising its rights under the Judgment provided that Defendants perform obligations set out therein, including monthly payments and a balloon payment in 2011. Defendants performed until sometime in 2011 when they failed to make payments under the

---

[4](...continued)
(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

See also Jim Walter Homes, Inc. v. Spears (In re Thompson), 894 F.2d 1227, 1231 (10th Cir. 1990)(If a debtor files a chapter 13 petition before a foreclosure sale, he has a right to cure.); Capital Realty Services, LLC v Benson (In re Benson), 293 B.R. 234, 239 (Bankr. D. Ariz. 2003)(A debtor's right to cure a default on a principal residence exists at least until completion of the trustee's sale, notwithstanding any state law that might terminate that cure right earlier.)(Construing 11 U.S.C. § 1322(c)(1)). It is not disputed that the Debtors' Property was never sold. The Court need not decide at this stage, rather than as part of the confirmation process, whether Debtors' plan must provide for full repayment of the entire debt within the five year period of the plan based on Huntington Nat'l Bank v. Sproul, 116 N.M. 254, 257, 861 P2d 935, 938 (1993) (obligations engendered by underlying note were extinguished and replaced by the obligations of the judgment). Now that Debtors are assured that the current case will at least continue to confirmation (a preliminary hearing on confirmation of the plan is scheduled for about six weeks from now), the parties and the Court can focus specifically on what confirmation may require. This result thwarts VNB's attempt in effect to obtain denial of confirmation at this early stage in the case, but does not preclude it from fully airing its position at any hearing on confirmation. VNB has objected to the Plan, including among the grounds for objection the specific issue of what amount has to be paid over the life of the plan. Doc 25. That would also be the context in which to decide whether the attorney fees incurred by VNB are reasonable in the context of section 506(b).

-5-

Case 12-11819-t13   Doc 30   Filed 06/07/12   Entered 06/07/12 16:25:11 Page 5 of 15

Agreement.  On November 30, 2011, Michael Padilola, Senior Vice President of VNB executed an affidavit of default that cancelled the Agreement and established a remaining balance due as of November 9, 2011 of $ 115,273.97 and accruing interest at a default rate of 10.25% per annum plus additional costs, expenses and fees to be incurred by VNB until sale of the Property.  VNB filed this affidavit with a "Notice of Default and Intent to Proceed [to sale]" in the Lawsuit on December 6, 2011.  The Special Master announced a public auction of the Property for 9:45 A.M. on January 11, 2012 at the Judicial Complex in Santa Fe County, New Mexico.

Debtor Martin Acevedo testified regarding his financial history, the circumstances surrounding the first Chapter 13 filing, his attempts to save it, and his refiling the current case.  The Court finds that substantially all, if not all, of his testimony was not contradicted by VNB or on cross-examination, and the Court makes the following findings regarding the Debtor under the clear and convincing standard.  Mr. Acevedo was cross-examined by VNB's attorney during which he freely admitted he had filed bankruptcy to save his house/ stop the forced sale of the Personal Residence.  The Court found him to be totally credible, honest, and well-intentioned.  He never denied any liability to VNB, never expressed any intention to avoid paying that debt, and actively demonstrated that he intended to pay all creditors.  The

Court finds that he was intelligent, but not financially sophisticated or familiar with legal terms or distinctions (such as distinctions between mortgage payments and forbearance payments).

Mr. Acevedo purchased his mobile home in 1991. In 2004 he acquired the land on which it sits. He did not borrow money from VNB to obtain the land. Rather, he borrowed the money to build additions onto the mobile home and to improve the property. The property consists of about 3 acres. It now has a two-car garage, a shed, and a basketball court. He believes it is worth $250,000. In 2009, Debtor's wife lost her job. To date, she has not found new employment. Despite the loss of her job, Debtor made payments to VNB throughout 2009, 2010, and 2011 until August when he could no longer afford the payments. He attempted to refinance because he understood his interest rate was 10.25% per year, but was unable to because there was a negative mark on his credit report from "Espanola National Bank." Nick Vigil, an agent of VNB promised to look into the Espanola National Bank comment but never reported back to Mr. Acevedo. He then learned that the residence was to be sold.

Mr. Acevedo testified that he learned of the impending sale of his residence on December 11, 2011 when he received a letter from VNB's attorney. After that notice he received a telephone message from "Triton," that apparently offered assistance with

-7-

Case 12-11819-t13    Doc 30    Filed 06/07/12    Entered 06/07/12 16:25:11 Page 7 of 15

his foreclosure problem. Mr. Acevedo had never heard of Triton before, but called them back to see if they could help him. He believed that they were a group of lawyers, and learned that if he paid them $1000 they would help save his house. He sent them the $1000. In return, he received a fax transmission with "papers"[5] he had to deliver to the bankruptcy court with a $281 fee to stop the foreclosure. He did. At the hearing, he admitted that he later learned the documents were not correct and were incomplete, but took full responsibility for his filing the papers and his ignorance. Mr. Acevedo had no prior experience with bankruptcy matters and expected that if anything else were required of him Triton would inform him. Rather, he received a Notice from the court that his case would be dismissed for failure to file statements and schedules. After receiving this notice Debtor attempted to educate himself about the situation in which he found himself, contacted the New Mexico State Bar and attended a State Bar bankruptcy clinic. He then, pro se, filed a

---

[5]The "papers" consisted of a three page voluntary petition that on page 2 was signed by Christopher Yates, "Attorney for Debtor"; but which on page 3 stated that the Debtor was not represented by an attorney, was signed by Christopher Yates stating that he was the foreign representative of the Debtor in a foreign proceeding, and provided all information required of a bankruptcy petition preparer for "Triton Law Group", Christopher Yates Petition Preparer but lacked Mr. Yates' signature. The "papers" also included Schedule D which stated that the Debtor had completed a credit counseling session but did not have the certificate, and a "verification of creditor matrix" that consisted of one creditor: VNB.

handwritten "Payment Plan" that disclosed his take home pay, his expected pay for the next month, and stated that he was attempting to find part time work, without success. He promised that he could start sending $650 a month on March 21st and every month after that, and stated that that was all he could afford after paying his living expenses. He also promised that, if he found part time work, he would increase his payments. He apologized for his delay in filing the "Plan" and thanked the Court for its patience. Thereafter, he contacted his present attorney who was unable to avoid the automatic 46-day dismissal.

On cross-examination, Mr. Acevedo testified that he had never seen the Judgment and was not even aware that VNB had obtained a judgment. He did not understand that the property had been foreclosed on, and did not understand that he had entered a "Forebearance Agreement"; rather, he understood that he agreed to make payments to VNB. He was unaware of the provision for a balloon payment due in 2011. He did not pay the balloon payment, partly because he was unaware that he had to.

Mr. Acevedo was aware of the impending sale of his residence in December 2011. He did not realize he had hired a bankruptcy petition preparer, did not know what that was, and was adamant that he had hired Triton attorneys to save his house. He admitted signing the bankruptcy petition voluntarily, but the Court finds that he had no understanding of what he was starting

when he filed the first petition.  He admitted that he received
the notice of forthcoming dismissal if he did not file documents
within 45 days, but testified that he tried to learn what to do
and did his best but ultimately did not file the requisite
papers.  When asked if his failures were "intentional or
inadvertent" he paused, then stated "I didn't mean to do that
[not file]."  When Bank's counsel tried to get him to admit that
his failure was "inadvertent", it became apparent that Debtor did
not know what "inadvertent" meant nor how to pronounce it.  And
Debtor immediately acknowledged that the failure to file papers
timely in the first case was not his attorney's fault.  Despite
the testimony, the Court finds that the failures were totally out
of ignorance and misplaced trust in a bankruptcy petition
preparer that represented himself as an attorney and swindled Mr.
Acevedo out of $1000.  He also was asked if he "messed up" and
truthfully answered "yes."  The Court finds that there was no
active attempt to evade or delay creditors in an unlawful way.
Debtor was exercising what he believed was his right to save his
home while paying VNB what was due on a payment plan.

On cross-examination Debtor also admitted that his expenses
were not entirely accurate.  For example, a $600 yearly property
tax was omitted from the monthly expenses.  VNB's attorney also
focused on the omission from Debtor's first schedule I the
listing of his daughter, although Debtor did list her in Schedule

-10-

I filed in the current case. The Court finds the omissions not material and certainly not intentional.

VNB's attorney also argued that Debtors' having no health insurance or provision for health costs or emergencies was not reasonable and was evidence of bad faith.[6] The Court disagrees. A good portion of the citizens in this country lack health insurance and get by on a monthly basis by praying that they will not suffer an expensive illness or injury which will force them over the financial edge. If Debtors' experience is that they can (or must) manage without the good fortune of health insurance, the Court will not declare that unreasonable.

Similarly, Debtor reduced his home maintenance expense on Schedule J from the first case to the second. The Court finds that if Debtors choose to defer maintenance on their house to save it, that is not unreasonable or evidence of bad faith. Debtor also testified that he no longer drives his car to work but rides to town with his son. This perfectly explains the drop in transportation expense, despite VNB's protestations to the contrary. And VNB argued that a food budget of only $200, rather than the $300 listed in Schedule I in the first case, was obviously not realistic. VNB specified these items in order to show that Debtor's financial situation had not changed but rather

---

[6] Debtor testified that their 15-year old daughter has access to health coverage free of charge to Debtors.

-11-

the Schedule I numbers had merely been gerrymandered to make it appear that there had been a substantial change in the financial circumstances.[7]  Whether reduced living expenses constitute a substantial change in financial circumstances is another question the Court does not need to decide in this case.

That is because Debtor testified that he now has obtained a second job, part time, at which he can work 25 hours per week at $10.30 per hour.  At an average of 4.3 weeks per month, this would generate an additional $1,107.25 per month (before taxes at probably the lowest bracket possible) that would be available for plan payments.  This is significant, compared to the current proposed plan payments of $175.  Plan, Art. 1.1 (doc 6).

The Court also found the testimony of VNB's witnesses, Dan Maes, Vice President for commercial lending at VNB, and the appraisal expert Paul Montoya, totally credible and professional, but not probative of this Motion.

**CONCLUSIONS OF LAW**

1.  It is not _per se_ bad faith to use the Bankruptcy Code to obtain relief specifically authorized by the Code.  _Goeb v. Heid (In re Goeb)_, 675 F.2d 1386, 1391 (9th Cir. 1982)(It was error for the bankruptcy court to rely exclusively on the fact that

---

[7] Whether, in the circumstances of these two cases, Debtor's employing an attorney since the filing of the first case constitutes a substantial change in either financial or personal circumstances, particularly if Debtor had not hired an attorney previously in his life, is a question the Court need not decide.

-12-

Case 12-11819-t13   Doc 30   Filed 06/07/12   Entered 06/07/12 16:25:11 Page 12 of 15

debtor would receive incidental benefits from chapter 13 in finding bad faith.)  Furthermore, even serial filings are not per se bad faith.  Downey Savings and Loan Ass'n v. Ketz (In re Metz), 820 F.2d 1495, 1497 (9th Cir. 1987).

2.   Under the circumstances of this case, the Court finds that although the Debtor, in fact, filed a bankruptcy petition in the one-year before this case, he did not comprehend, understand, or intend to do so.  Rather, he was tricked into filing by a person misrepresenting himself to be a lawyer on which he reasonably or at least justifiably relied.  He should not be denied bankruptcy relief due to unintentional behavior caused by a third party.

3.   Debtor is an honest, unfortunate debtor worthy of bankruptcy protection.  He is not the type of debtor that the Bankruptcy Abuse Prevention and Consumer Protection Act, even with its anti-debtor spirit, was passed to protect creditors against.  Cf. P.L. 109-8 (S 256)("Discouraging Bad Faith Repeat Filings").  Debtor filed the petition in good faith.

4.   A debtor is excused in Section 362(c)(3)(C)(i)(II)(aa) for an attorney's negligence. Debtor's previous case's dismissal was caused by the negligence of the bankruptcy petition preparer. Alternatively, it was caused by the bankruptcy petition preparer's fraudulent representations that he was an attorney. Either characterization satisfies the requirement of subsection (aa).

-13-

5.  Debtor's reliance on Triton was reasonable (or at least justifiable) in the circumstances.

6.  Debtor's acquisition of a second job demonstrates a substantial change in circumstances justifying a continuance of the automatic stay, at least to confirmation. Furthermore, VNB's appraiser valued the property at more than the debt, demonstrating equity in the property. By definition, in a Chapter 13 case filed to save a debtor's home, the residence is necessary for reorganization. This indicates that VNB could not obtain relief from the stay at this time. Alternatively, it demonstrates that VNB will be sufficiently protected by an equity cushion until confirmation.

**CONCLUSION**

For the reasons stated, the Court finds that the Motion to Continue Automatic Stay is well taken and will be granted by separate order, subject to Debtors resuming monthly payments of $847.50 beginning June 15, 2012 and continuing on the 15th of each subsequent month thereafter unless changed by Court order.[8] All of the objections of VNB are not well taken and each are specifically overruled.

---

[8] Art. 4.4 of the Plan provides for direct payment on the debt to VNB. Doc 6.

-14-



Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:   June 7, 2012

Copies to:

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

James Jurgens
100 La Salle Cir Ste A
Santa Fe, NM 87505-6976

-15-